## Cox *versus* BODFISH.

Joint stock associations, though with a common object, and for the purpose of dealing exclusively in personal property, and with a community of profit and loss, are not necessarily co-partnerships.

In a suit brought against the depositary of such an association by one of its members to recover his aliquot part of the joint fund, it is no defence that available debts are yet due to the company.

Such an association was formed to operate by trade and labor in a distant State. Its constitution divided the stock into shares of $500, and provided that each member, by subscribing to render his personal labor should be entitled to another share, but that desertion from the service should forfeit all his interest in the association.

C. became a stockholder, but did not subscribe for personal services. He however authorized W., as his substitute, to labor and vote as representing his share abroad, and W. was permitted to act and vote accordingly, though he had never subscribed for stock. W. afterwards deserted the employment. *Held*, that the substitution conferred upon W. no share in the stock, and that C's interest in the association was not forfeited by the desertion, although such a forfeiture had been declared by the unanimous vote of the company.

ASSUMPSIT.

Certain persons, among whom was the plaintiff, stipulated

with each other under their hands and seals, Jan. 15, 1849, to form an association for trading and mining in California, called the Kennebec Mining and Trading Company. They adopted a constitution on Jan. 29, 1849. By it the capital stock was divided into eighty shares, each subscriber to have one share for every five hundred dollars by him subscribed.

Whoever of the share holders should subscribe to go to California, and there render his personal services for the benefit of the Company was to have therefor an additional share. The 14th article of the constitution prohibited any member to withdraw from the association, without the written permission of the majority, and provided that any member so withdrawing, should forfeit all his interest in the association. Certificates of stock were issued to the share holders, transferable by indorsement. The plaintiff was a subscriber for one share, and received a certificate of the same. The defendant was also a share holder. The management of the association was confided to three directors, of whom the president was to be one *ex officio.* The defendant subscribed to go to California, and he was chosen president.

The directors purchased a vessel, loaded her on company account and sent her to California, carrying the share holders who were to be there employed. The defendant went to California and acted as president and director, and afterwards returned to Maine in the early part of 1851.

The plaintiff introduced evidence tending to prove that the defendant, after so returning, paid to several of the members of the company $920 each, upon their respective shares. There was also evidence tending to prove that, long after the bringing of this suit, there were debts due to the company of at least $2,500. To the plaintiff's demand for his share of the money, the defendant replied, that the company had declared the plaintiff's share to be forfeited. The plaintiff, asserting that the company was dissolved in 1850, brings this suit to recover his proportion of the funds.

The defendant introduced evidence that the plaintiff admitted (after the sailing of the vessel,) that Frederick Wells who

was on board, represented his share ; — that he had consented that Wells might " go against his share ;" — also evidence that Wells, on the passage out, and on arriving at California, voted with the company, and that, about twenty days after the arrival, he deserted the ship, and did not afterwards rejoin the company. The defendant requested instruction to the jury : —

1. *That*, to enable the plaintiff to recover, they must be satisfied that the debts due to the company had been paid, or were worthless ; —

2. *That* if it was understood and agreed between the plaintiff and Wells and the company, that Wells should become the proprietor of Cox's share, and should become a member of the company, and if Wells, in pursuance of that agreement, did actually become a member of the company, and did subsequently withdraw, without their consent, the share purchased by the plaintiff would be forfeited, although he did not transfer his certificate by writing on the back, and although Wells did not sign the articles of agreement.

These requested instructions, the Judge refused to give, but told the jury that Wells could not become a member, so as to forfeit by desertion, without signing the articles of agreement, unless the provisions of the articles of agreement or constitution had been waived by every member of the company. The jury returned a verdict of 920 dollars for the plaintiff. To the aforesaid instructions of the Judge and refusals to instruct, the defendant excepted.

*H. W. Paine*, for the defendant.

The plaintiff and defendant were both members of a co-partnership, doing business under the name of the " Kennebec Trading and Mining Company." This action is brought to recover a portion of the common fund, and the plaintiff must show that the defendant has his money.

The plaintiff might claim upon either of two grounds ; — that the defendant had *his* dividend money set apart for *him*, or that, as a member of the company, the defendant had more than his share of the common fund. There was evidence

which, if believed by the jury, established the fact that debts to a large amount were due to the company when the action was brought.

The defendant requested instruction, that the suit could not be maintained, unless it were shown that the debts due to company had been paid or were worthless. It was error to refuse this request.

In England, assumpsit will not lie in favor of one partner against his co-partner, unless a final balance has been struck and an express promise to pay has been made. But it has been held in Massachusetts, that if a final balance has been ascertained, an action may be supported. It must, however, be a *final balance*, so that the judgment may put an end to all controversy. *Fanning* v. *Chadwick*, 3 Pick. 420; *Brinley* v. *Kupfer*, 6 Pick. 179; *Williams* v. *Henshaw*, 11 Pick. 79.

The 4th requeted instrusction ought to have been given.

The sixth article of the constitution gives the form of a certificate of stock, declaring that the same shall be transferable by indorsement. That sort of evidence of the transfer, the company may waive, though they would not be *obliged* to recognize, as a member of the company, a person who should claim to be the owner of a share, *not so transferred*.

Now the request presupposes, *that* the jury may find that Wells was the proprietor of the certificate issued to the plaintiff;—*that, with consent* of the company, he was a member; and *that* he withdrew *without consent*, in violation of the 14th article. Why then did he not forfeit all his interest? and being proprietor of the share, which was once Cox's property, why did he not forfeit that?

But Wells did not sign the articles. What of that? The original members did sign and seal, but is it therefore incompetent for them to take in additional partners, without requiring them to sign and seal?

Does it lie in the mouth of this plaintiff, who had placed his certificate in Wells' hands, to enable him to become a member, now to urge that he was permitted to go as a mem-

ber, and to act as a member, *but was not in fact a member?* and therefore incapable of forfeiting the share, without which he could not have gone.

The whole basis of the enterprize was, that no person could be a member without the investment of money. There must be something for each one to forfeit, in order that he might be kept true. The plaintiff had one share by virtue of his investment 'of $500. He would have had a right to another share, by subscribing to go upon the expedition. He wished to substitute Wells as the laborer in his room. The company consented, and Wells was substituted. If the plaintiff had gone, and then deserted, his interest would have been forfeited. And the same result must follow from the desertion of the man, whom at the plaintiff's request, the company received and treated as his substitute.

By such proceedings on the part of the plaintiff, he must be estopped. Otherwise they were a fraud on the company. . Should it be said that these parties were not co-partners, but mere tenants in common, no advantage *could arise* therefrom to the plaintiff. For one tenant in common can maintain no action against another for a part of the common property.

*Allen* and *Evans,* for the plaintiff.

SHEPLEY, C. J. — The association of which the defendant was president, was formed by an instrument subscribed and sealed by the parties to it. Each person was to have one share for every $500 subscribed. The capital was to consist of eighty shares, transferable certificates of which were to be issued.

The constitution of the association provided for a choice of officers, and that the president and directors should " have the exclusive direction and arrangement of all the concerns of the company and treasury department." Thus constituted it became rather a joint stock company than a proper co-partnership. If they had been co-partners, each individual could have disposed of the whole property, incurred liabilities, and made purchases.

In this association no one, nor even all the members, not being directors, could have done this. And the law applicable to partnerships proper does not decide the rights of the members. *Livingston* v. *Lynch*, 4 Johns. Ch. 573 ; *Irvine* v. *Forbes*, 11 Barb. 588.

By the constitution of the company, no person could become a member of it without subscribing and sealing the indenture or obtaining a certificate of stock directly from its officers or by transfer. Two classes of stockholders were provided for, those who owned stock without engaging to render any personal service, and those who agreed to go to California and to devote their personal services exclusively for the benefit of the company, for which each was to have one additional share. There was no provision, that a person who was not an owner of stock should become so by rendering such personal service. The plaintiff *does not appear to have* become one of those members, who had agreed to render a personal service.

The testimony shows, that he consented that Frederick Wells should represent his share ; and that he was permitted to perform service for a time, and to vote and act as a member of the company. Such permission and action could not constitute him a legal member, for those members who performed service had no power to introduce thus a new member. If they permitted him thus to act as a member, and to have the privileges of one, and to derive a benefit from them, it must be imputed to their own inconsideration or negligence. One who was not legally a member of the company, could not by a violation of its laws occasion the forfeiture of a share of one, who was a legal member.

The defendant does not appear to have been aggrieved by the instructions which were given, and those requested were properly refused. *Exceptions overruled.*

HOWARD, WELLS and HATHAWAY, J. J., concurred.